Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard, First Floor
Mineola, NY 11501
Telephone:	516.741.4977
Facsimile:	516.741.0626
esmith@brodskysmith.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA McELROY,<br><br>           Plaintiff,<br><br>     v.<br><br>WEBER INC., KELLY RAINKO, SUSAN T. CONGALTON, ELLIOT HILL, MARTIN McCOURT, MELINDA R. RICH, JAMES C. STEPHEN, and MAGESVARAN SURANJAN,<br><br>           Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Linda McElroy ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.  Plaintiff brings this stockholder action against Weber Inc. ("Weber" or the "Company"), Weber's Board of Directors (the "Board" or the "Individual Defendants," collectively with Weber and the Board, the "Defendants"), for violations of Sections 14(a) and

1

20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), as a result of efforts to sell the Company to certain affiliates of BDT Capital Partners LLC, namely Ribeye Parent, LLC ("Parent") via merger subsidiary Ribeye Merger Sub, Inc. ("Merger Sub" together with Parent and BDT Capital Partners LLC, "BDT Capital"), and to enjoin the consummation of an upcoming all cash proposed transaction (the "Proposed Transaction").

2.   The terms of the Proposed Transaction were memorialized in an December 28, 2022 filing with the United States Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Weber shareholders will receive $8.05 for each share of Weber Class A common stock owned. As a result, Weber will become an indirect wholly-owned subsidiary of BDT Capital.

3.   Thereafter, on January 17, 2023, Weber filed an Information Statement on Form PREM14C with the SEC in support of the Proposed Transaction (the "Information Statement").

4.   The Proposed Transaction is unfair for several reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.

5.   Significantly, the consummation of the Proposed Transaction is a foregone conclusion, with insiders affiliated with BDT Capital already owning the majority of the voting stock of the Company have agreed to vote in favor of the Proposed Transaction. This, coupled with the fact that the Defendants chose not to include a "majority-of-the-minority" provisions, foreclose the possibility of the Proposed Transaction not being consummated, in spite of the lack of benefit to Plaintiff and other Company public stockholders.

6.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Information Statement depriving Plaintiff of the proper information necessary to decide whether to seek appraisal of her shares. The Information Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to seek appraisal for her stock, and is thus in violation of the Exchange Act. As detailed below, the Information Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Weber, provided by Weber management to the Board and the Board's financial advisor Centerview Partners, LLC ("Centerview") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Centerview, if any, and provide to the Company and the Board.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## PARTIES

8.      Plaintiff is a citizen of New York and, at all times relevant hereto, has been a Weber shareholder.

9.      Defendant Weber is a Delaware corporation whose principal executive office is located at 1415 S. Roselle Road, Palatine, Illinois 60067. Weber's common stock is publicly traded on New York Stock Exchange ("NYSE") under the symbol "WEBR".

10.     Defendant Kelly Rainko ("Rainko") has served as director of Company at all relevant times and serves as the Chairman of the Company Board.

11.     Defendant Susan T. Congalton ("Congalton") has served as director of Company at all relevant times.

12. Defendant Elliot Hill ("Hill") has served as director of Company at all relevant times.

13. Defendant Martin McCourt ("McCourt") has served as director of Company at all relevant times.

14. Defendant Melinda R. Rich ("Rich") has served as director of Company at all relevant times.

15. Defendant James C. Stephen ("Stephen") has served as director of Company at all relevant times.

16. Defendant Magesvaran Suranjan ("Suranjan") has served as director of Company at all relevant times.

17. The Defendants named in paragraphs 10-16 are referred to herein as "Individual Defendants" or "Director Defendants."

18. Non-Party BDT Capital Partners LLC is a private investment fund headquartered in Chicago, Illinois.

19. Non-Parties Parent and Merger Sub are subsidiaries of BDT Capital Partners LLC created solely to complete the Proposed Transaction.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each defendant either because the defendants conduct business in or maintain operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23. Weber is a publicly traded American manufacturer of charcoal, gas, and electric outdoor grills with related accessories.

24. The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a December 14, 2022 press release announcing its 2022 Fourth Quarter and Full Year Financial Results, Company Interim Chief Executive Officer Alan Matula ("Matula") commented, "Weber is delivering world-class, innovative outdoor cooking products around the world and remains the global category leader," continuing, "Our fiscal fourth quarter and full-year performance demonstrates that we have maintained significant growth compared to pre-pandemic levels."

25. The financials and optimism are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Weber. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

26. Nevertheless, the Individual Defendants have caused Weber to enter into the Proposed Transaction.

*The Flawed Sales Process*

27. As detailed in the Information Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

28. Notably, the Information Statement fails to disclose the specific powers of the Special Committee formed to run the sales process.

29. The Information Statement also fails to disclose adequate reasoning as to why no majority-of-the-minority provision was included in the Proposed Transaction.

30. Additionally, the Information Statement is silent as to the nature of the confidentiality agreement entered into between the Company and BDT Capital, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Information Statement (including those involved in other types of strategic alternatives besides a sale of the Company), and if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

31. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

32. On December 12, 2022, Weber issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **PALATINE, Ill – December 12, 2022 –** Weber Inc. (NYSE: WEBR) ("Weber" or the "Company"), the global leader in outdoor cooking innovation, technology and products, today announced that it has entered into a definitive merger agreement pursuant to which investment funds managed by BDT Capital Partners LLC ("BDT") will purchase all of the outstanding Class A Shares that they do not already own, for $8.05 per share of Class A common stock of Weber ("Class A Share"), which implies a total enterprise value of $3.7 billion for Weber.
> The purchase price represents a premium of 60% to the closing price of the Class A Shares on October 24, 2022, the last trading day before BDT submitted a non-binding acquisition proposal to the Board of Directors of the Company (the "Board") and Weber disclosed the receipt of such proposal.
>
> A special committee (the "Special Committee") of the Board, comprised solely of independent directors, advised by its own independent financial and legal advisors, determined that the proposed transaction is in the best interests of the holders of Class A Shares other than BDT and unanimously recommended that the Board approve the transaction. Acting upon the recommendation of the Special Committee, Weber's Board approved the transaction.
>
> "We appreciate the Special Committee's comprehensive evaluation of BDT's offer and are confident that this transaction provides immediate and fair value to Weber minority shareholders," said interim Weber CEO Alan Matula. "For over a decade, BDT has been a longstanding strategic partner for Weber. With their continued support, our global team will move forward in executing our long-term strategy with consumers and customers as our top priorities. And we'll continue to sharpen our focus on doing what we do best: delivering the outdoor cooking industry's most innovative, best-performing, highest-quality products and engaging millions worldwide who love to gather together and cook outside."
>
> "Weber is the #1 brand and global category leader in outdoor cooking, and it has demonstrated a relentless commitment to quality and innovation over its 70-year history. We look forward to continuing our partnership with the company and the founding Stephen family in its next chapter," said Kelly Rainko, BDT Partner and Non-Executive Chair of the Board of Weber.

7

> Upon completion of the transaction, Weber will become a privately held company majority owned by investment funds managed by BDT.
>
> The transaction is expected to close in the first half of 2023, subject to customary closing conditions, including HSR clearance. The transaction has been approved by the written consent of the holders of the requisite number of shares of common stock of Weber, such that no additional stockholder approval is required.
>
> In connection with the transaction, BDT managed investment funds will provide Weber with an additional unsecured loan facility in the aggregate principal amount of $350 million. Weber intends to utilize the loan for general corporate purposes including repaying existing indebtedness, continuing to make necessary investments in capital expenditures that support new product initiatives, and funding working capital for the upcoming 2023 outdoor cooking season. The previous loan agreement that Weber entered into with BDT managed investment funds on November 8, 2022, will remain outstanding.

*Potential Conflicts of Interest*

33. The breakdown of the benefits of the deal indicate that Weber insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Weber.

34. First and foremost, the Proposed Transaction itself represents a freeze-out of all public stockholders, such as Plaintiff, foreclosing anyone but BDT Capital from enjoying the future success of Weber.

35. Additionally, Company insiders including officers and directors, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. While the Information Statement provides the following it fails to provide the specific amount of Merger Consideration that these shares will be exchanged for.

*Officer and Director Stock Ownership*

| Name of Beneficial Owner | Beneficial Ownership | | | | | | |
|---|---|---|---|---|---|---|---|
| | Class A Shares | Class B Shares | Options[1] | Restricted Stock Units[2] | Percent of Class A | Percent of Class B | Combined Voting Power |
| **Non-Employee Directors** | | | | | | | |
| Kelly D. Rainko | 151,681 | 832,785 | — | — | * | * | * |
| Susan T. Congalton[3] | 18,929 | — | — | — | * | * | * |
| Elliott Hill[3] | 8,929 | — | — | — | * | * | * |
| Martin McCourt[3] | 6,250 | — | — | — | * | * | * |
| Melinda R. Rich | 8,929 | — | — | — | * | * | * |
| James C. Stephen | 8,929 | — | — | — | * | * | * |
| Magesvaran Suranjan | 8,929 | — | — | — | * | * | * |
| **Named Executive Officers** | | | | | | | |
| Alan D. Matula[3] | 23,529 | — | 23,409 | 32,592 | * | * | * |
| William J. Horton[3] | 23,706 | — | 23,258 | — | * | * | * |
| Michael G. Jacobs[3] | 18,713 | — | 20,772 | 74,979 | * | * | * |
| Steffen Hahn | 23,265 | — | 21,667 | — | * | * | * |
| Jennifer Bonuso | 9,933 | — | 15,152 | 34,249 | * | * | * |
| Chris M. Scherzinger[3] | — | — | — | — | * | * | * |
| Hans-Jürgen Herr[3] | 33,535 | — | 29,203 | 235,338 | * | * | * |
| Ryan B. Warren | 5,676 | — | — | 28,492 | * | * | * |
| **All Executive Officers and Directors as a Group (13 Persons)[4]** | 317,215 | 832,785 | 123,808 | 141,820 | 1% | * | * |

36. Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Again, while the Information Statement provides the following it fails to provide the specific amount of Merger Consideration that these shares will be exchanged for.

*Treatment of Company Equity Awards—Directors*

| Name | Number of Unvested Director RSU Awards | Estimated Value of Unvested Director RSU Awards |
|---|---|---|
| Kelly Rainko | —[1] | $ — |
| Susan T. Congalton | 11,292 | $ 90,901 |
| Elliott Hill | 11,292 | $ 90,901 |
| Martin McCourt | 11,292 | $ 90,901 |
| Melinda R. Rich | 11,292 | $ 90,901 |
| James C. Stephen | 11,292 | $ 90,901 |
| Magesvaran Suranjan | 11,292 | $ 90,901 |

*Treatment of Company Equity Awards—Executive Officers*

| Name | Number of Unexercised Company Options | Company Option Exercise Price | Number of Company RSU Awards | Number of Company Profit Unit Awards |
|---|---|---|---|---|
| Alan D. Matula | 70,227 | $ 18.05 | 421,667 | 1,239,478.70(a) |
| William J. Horton | 69,774 | $ 18.05 | 221,996 | 1,277,050.82(b) |
| Michael G. Jacobs | 62,317 | $ 18.05 | 290,101 | 1,239,478.10(c) |
| Erik Chalut | 58,651 | $ 18.05 | 132,616 | — |
| Jennifer Bonuso | 45,457 | $ 18.05 | 202,260 | — |
| Steffen Hahn | 65,000 | $ 18.05 | 172,037 | — |
| Hans-Jürgen Herr | 87,610 | $ 18.05 | 481,823 | — |
| Chris M. Scherzinger | — | — | — | 1,381,064.93(d) |
| Mary A. Sagripanti | — | — | — | 413,159.50(e) |
| Troy J. Shay | — | — | — | 1,450,101.40(f) |
| Ryan B. Warren | — | — | 28,492 | — |

37. In addition, certain employment agreements with certain Weber executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Potential Change of Control Payments to Named Executive Officers**

| Name | Cash Severance[1] | Perquisites/ Benefits[2] | Total[3] |
|---|---|---|---|
| Alan D. Matula | $1,643,459 | $ — | $1,643,459 |
| William J. Horton[4] | $ 670,274 | $ 16,669 | $ 686,943 |
| Michael G. Jacobs | $ 606,438 | $ 16,669 | $ 623,107 |
| Steffen Hahn[5] | $ 376,474 | $ — | $ 376,474 |
| Jennifer Bonuso | $ 537,353 | $ 16,669 | $ 554,022 |
| Hans-Jürgen Herr[6] | $1,777,714 | $ — | $1,777,714 |

38. The Information Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board,

10

as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

39. Thus, while the Proposed Transaction is not in the best interests of Weber, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

### *The Materially Misleading and/or Incomplete Information Statement*

40. The Weber Board caused to be filed with the SEC a materially misleading and incomplete Information Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

#### *Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

41. Specifically, the Information Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Information Statement fails to disclose:

   a. Adequate disclosure as regarding the specific powers of the Special Committee;

   b. Adequate reasoning as to why no majority-of-the-minority provision was agreed to;

   c. Whether the confidentiality agreements entered into by the Company with BDT Capital differed from any other unnamed confidentiality agreement entered into between the Company and any other interested third parties (including involving other types of strategic alternatives);

  d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including BDT Capital, would fall away; and

  e. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

*Omissions and/or Material Misrepresentations Concerning Weber's Financial Projections*

42. The Information Statement fails to provide material information concerning financial projections for Weber provided by Weber management to the Board and Centerview and relied upon by Centerview in its analyses. The Information Statement discloses management-prepared financial projections for the Company which are materially misleading.

43. Notably the Information Statement reveals that as part of its analyses Centerview reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of the Company, including certain financial forecasts, analyses and projections relating to the Company prepared by management of the Company…"

44. Therefore, the Information Statement should have, but fails to provide, certain information in the projections that Weber management provided to the Board and Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

45. With regard to the *Certain Company Financial Forecasts* prepared by Weber, the Information Statement fails to disclose material line items for the following:

   a. Adjusted EBITDA, including all underlying inputs, metrics, and assumptions, including specifically: operating income, depreciation and amortization and stock based compensation;

   b. Net Operating Profit After Tax, including all underlying inputs, metrics, and assumptions, including specifically: depreciation and amortization, stock based compensation, and taxes; and

   c. Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions, including specifically: capital expenditure, increase in net working capital, and depreciation and amortization.

46. With regard to the *November 3 Projections* prepared by Weber, the Information Statement fails to disclose material line items for the following:

   a. Adjusted EBITDA, including all underlying inputs, metrics, and assumptions, including specifically: operating income and depreciation and amortization;

   b. Net Operating Profit After Tax, including all underlying inputs, metrics, and assumptions, including specifically: depreciation and amortization, stock based compensation, and taxes; and

   c. Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions, including specifically: capital expenditure, increase in net working capital, and depreciation and amortization.

47. The Information Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48. This information is necessary to provide Plaintiff, in her capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49. Without accurate projection data presented in the Information Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Centerview's financial analyses, or make an informed decision whether to seek appraisal for her shares. As such, the Board has violated the Exchange Act by failing to include such information in the Information Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

50. In the Information Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51. With respect to the *Discounted Cash Flow Analysis*, the Information Statement fails to disclose:

    a. The inputs, metrics, and assumptions used to determine the utilized discount rate range of 9.5% to 11.0%;

    b. Weber's weighted average cost of capital utilized;

    c. The range of implied terminal values for the Company calculated;

      d. The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 2.0% to 3.0%;

      e. Weber's net debt as of September 30, 2022;

      f. The number of Weber Class A and Class B shares outstanding as November 28, 2022; and

      g. The number of vested incentive equity awards and Director RSU Awards outstanding as of December 9, 2022.

52. With respect to the *Selected Public Companies Analysis*, the Information Statement fails to disclose:

      a. The inputs, metrics, and assumptions used to determine an EV to 2024E EBITDA of 12.5x to 17.5x;

      b. Weber's net debt as of September 03, 2022; and

      c. The number of fully-diluted outstanding Weber shares as of December 9, 2022.

53. With respect to the *Analyst Price Targets Analysis*, the Information Statement fails to disclose:

      a. The specific price targets utilized; and

      b. The identity of the Wall Street firms and/or analysts that generated the price targets utilized.

54. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to seek appraisal for their shares.

55. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and

related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Weber stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Information Statement

### FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

56. Plaintiff repeats all previous allegations as if set forth in full herein

57. Defendants have disseminated the Information Statement in favor of the Proposed Transaction.

58. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

59. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the

circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

60. The Information Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Information Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

61. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

62. The Individual Defendants were at least negligent in filing an Information Statement that was materially misleading and/or omitted material facts necessary to make the Information Statement not misleading.

63. The misrepresentations and omissions in the Information Statement are material to Plaintiff and the Class, and at present fail to provide complete information if such misrepresentations and omissions are not corrected.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against All Defendants)

64. Plaintiff repeats all previous allegations as if set forth in full herein.

65. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Information Statement was materially misleading to Company stockholders.

66. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Information Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Information Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Information Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

67. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Weber's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Information Statement was misleading.

As a result, the Individual Defendants are responsible for the accuracy of the Information Statement and are therefore responsible and liable for the misrepresentations contained herein.

68. The Individual Defendants acted as controlling persons of Weber within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Weber to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Weber and all of its employees. As alleged above, Weber is a primary violator of Section 14 of the Exchange Act and SEC Rule Information Statement. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor, and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate an Information Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: January 19, 2023

**BRODSKY & SMITH**

By: *Evan J. Smith*

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Attorneys for Plaintiff*